UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHIRLEY WRUBEL, AS TRUSTEE OF THE SARA HOLLANDER IRREVOCABLE LIFE INSURANCE TRUST<br><br>Plaintiff,<br><br>v.<br><br>JOHN HANCOCK LIFE INSURANCE COMPANY<br><br>Defendant. | Misc. Case Number: M8-85<br><br>12-misc-00077 |

### DECLARATION OF SEAN R. FLANAGAN IN SUPPORT OF JOHN HANCOCK'S MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS AND DEPOSITIONS OF NON-PARTIES

I, Sean R. Flanagan, hereby declare:

1. I am an associate of the law firm Kelley Drye & Warren LLP, the attorneys for defendant John Hancock Life Insurance Company (U.S.A.), incorrectly identified in the Complaint as John Hancock Life Insurance Company ("Defendant" or "John Hancock"), in the above-captioned action. This affidavit is submitted in support of Defendant's motion under Fed. Rule Civ. P. 37(a), 45 (c)(2)(B) and 45 (e) to compel non-parties Mr. Herman Jacobowitz, Mr. Mordechai Rubin and B&M Resort LLC (collectively, the "Non-Parties") to comply with the *subpoenas duces tecums* served on them on January 6, 2012, January 13, 2012 and January 24, 2012, respectively (the "Subpoenas"). I am fully familiar with the facts stated in this affidavit.

## Factual Background

**A.   Plaintiff Files Action Against John Hancock**

2.   Plaintiff, Shirley Wrubel ("Plaintiff") as trustee of the Sara Hollander Irrevocable Life Insurance Trust (the "Trust"), brought this action in New York State Court against John Hancock to collect the proceeds of two $5 million life insurance policies, UL 93 745 073 and UL 94 051 075 (collectively, the "Policies"), issued in April and May 2008 and insuring the life of Plaintiff's mother, Sara Hollander (the "Insured"). John Hancock removed the action to the United States District Court for the Eastern District of New York, where this case is currently pending before United States District Court Judge William F. Kuntz.

3.   In the applications for the Policies (the "Applications"), the Insured and Plaintiff represented to John Hancock that the Insured had a net worth of $9 million and that she had investment income of $200,000. In addition, the Plaintiff and the Insured represented that the premiums for the Policies would be paid from the Insured's income and savings. In reliance on these representations, among others, John Hancock issued the Policies.

4.   The Insured died in December 2009, within the two year contestability period proscribed in the Policies. Plaintiff submitted a death claim on the Policies on October 26, 2010. John Hancock, based on an initial investigation, denied the claims on the grounds that the Insured materially misrepresented her net worth and income.

5.   Plaintiff was deposed on January 11, 2012. Attached hereto as Exhibit A is a true and correct copy of excerpts from Plaintiff's deposition. In her deposition, she testified that her mother was never employed, did not own real property at the time of her death, did not own any stocks, bonds or a 401k plan, and did not have an annual investment income of $200,000 or a net worth $9 million. (See, Ex. A at 41-53.) When the Insured died, Plaintiff

testified that her mother left no estate and did not leave a will. (See, Ex. A at 56-57.) At the time of her death the Insured had less than $25,000 in bank accounts and mutual funds. (See, Ex. A at 58.) Plaintiff stated that her mother lived in a rental apartment in Brooklyn, and was likely on social security. (See, Ex. A at 64-65.) Plaintiff, to date, has failed to produce any documents substantiating her mother's wealth or income and has not produced any documents concerning the Trust's bank account with JPMorgan Chase Bank ("JPMC") opened by the Plaintiff and used to pay premiums.

6. In addition, evidence produced by JPMC in response to a subpoena issued by John Hancock, shows that the premiums paid under the Policies were paid by non-parties who were likely investors in the Policies. If true, this would be contrary to the Plaintiff's and Insured's representations that the premiums were to be paid from the Insured's income and savings. Had these facts been disclosed to John Hancock at the time the Applications were submitted, John Hancock would not have issued the Policies.

### B. John Hancock Issues Subpoena to Mr. Rubin

7. During her deposition, Plaintiff disclaimed any knowledge of the source of the funds used by the Trust to pay for the premiums owed under the Policies. (See, Ex. A at 99 - 100.) The premiums for the Policies totaled over $500,000. Plaintiff stated that the best person to ask about the source of these funds would be her son-in-law, Mr. Rubin. (See, Ex. A at 114 - 121.) She also stated that Mr. Rubin was the person who assisted the Insured with the applications for the Policies. (See, Ex. A at 114 - 121.)

8. On January 13, 2012, John Hancock issued a *subpoena duces tecum* to Mr. Rubin (the "Rubin Subpoena") by serving him personally at his residence located in Monsey,

New York. Attached hereto as Exhibit B is a true and correct copy of the Rubin Subpoena and accompanying affidavit of service indicating receipt of the subpoena.

9.    The Rubin Subpoena requested the production of documents concerning, among other things, the source of the funds used to pay the premiums paid under the Policies, the Insured's net worth at the time of the Applications, and any documents concerning the Applications themselves. (See, Ex. B.) Mr. Rubin was to produce documents by January 27, 2012. Furthermore, Mr. Rubin, pursuant to the subpoena, was required to appear for a deposition on January 31, 2012. (See, Ex. B.)

10.   Subsequent to the issuance of the Rubin Subpoena, on January 26, 2012, the Court granted Plaintiff's counsel request for a stay in the discovery of the action for 30-days (the "Stay"). Accordingly, Discovery in this action was stayed until late February 2012.

11.   On January 27, 2012, I sent a letter to Mr. Rubin, adjourning his deposition to February 28, 2012. Attached hereto as Exhibit C is a true and correct copy of the letter sent to Mr. Rubin, dated January 27, 2012. In addition, Mr. Rubin, as a non-party, was still required to produce documents notwithstanding the Stay. Mr. Rubin failed to object to the document requests and failed to produce any documents.

12.   On February 13, 2012, John Hancock issued an amended subpoena to Mr. Rubin (the "Amended Rubin Subpoena"), requiring a production of documents on February 23, 2012 and requiring him to appear for a deposition on February 28, 2012. Attached hereto as Exhibit D is a true and correct copy of the Amended Rubin Subpoena and accompanying affidavit of service indicating receipt of the subpoena.

13.   Mr. Rubin failed to serve any objection to either the Rubin Subpoena or the Amended Rubin Subpoena and has failed to produce any documents. On February 22, 2012,

4

I sent Mr. Rubin a letter reminding him that his deposition was going forward on Febraury 28, 2012. Attached hereto as Exhibit E is a letter to Mr. Rubin, dated February 22, 2012. Mr. Rubin did not respond to the letter and failed to appear for his deposition on February 28, 2012, causing John Hancock to incur an estimated $400 in fees for a court reporter's and videographer's time.[1]

### C.  John Hancock Issues Subpoena to B&M Resort

14. On November 29, 2011, John Hancock subpoenaed the Trust's bank account records from JPMC (the "JPMC Subpoena"). Attached hereto as Exhibit F is a true and correct copy of the JPMC Subpoena. In response to the JPMC Subpoena, JPMC produced copies of cancelled checks deposited into the Trust's account from various individuals and corporations including, among others, B&M Resort. None of these individuals or corporations have any apparent connection to the Plaintiff or the Insured, but it appears that these funds were the sole source of the premium payments. Thus, these cancelled checks suggest that the Trust fronted for a syndicate of investors contrary to the representations in the Applications that the Policies would be owned by the Trust.

15. Accordingly, on January 24, 2012, John Hancock issued a subpoena to B&M Resort (the "B&M Resort Subpoena"), seeking, among other things, the production of documents concerning the check submitted by B&M Resort to the Trust by February 9, 2012 and to appear for a deposition on February 14, 2012. Attached hereto as Exhibit G is a true and correct copy of the B&M Subpoena and accompanying affidavit of service indicating receipt of the subpoena.

---

[1] The costs incurred for the depositions of Mr. Rubin and B&M Resort is estimated because the recording service, David Feldman Worldwide Inc., is unable to provide invoices to these depositions because their billing department has not yet processed these accounts.

16. On February 10, 2012, I spoke to a representative from B&M Resort and informed him that because of a stay in discovery, B&M Resort's deposition would be adjourned to March 2, 2012. During this discussion, B&M Resort's representative agreed that March 2, 2012 was okay for him, and he admitted that the cancelled check produced by JPMC was B&M Resort's check. The representative was not sure, however, why the check would have been sent to the Trust, but he speculated that it might have been part of a "syndicate." I sent B&M Resort a letter to confirm the adjournment of its deposition. Attached hereto as Exhibit H is a true and correct copy of a letter to B&M Resort LLC, dated February 10, 2012.

17. B&M Resort never produced any documents pursuant to the subpoena. In addition, B&M Resort failed to appear for a deposition on March 2, 2012, causing John Hancock to incur an estimated $200 in fees for a court reporter's time.

### D. John Hancock Issues Subpoenas to Mr. Jacobowitz

18. Plaintiff, in her initial disclosures and in her deposition, stated that the Insured had a business partner, Mr. Jacobowitz. According to Plaintiff, Mr. Jacobowitz would be better able to discuss the Insured's real estate investments and would be the person who could explain what investments the Insured owned at the time the Applications were submitted. (See, Ex. A at 82 - 83.)

19. On January 6, 2012, John Hancock issued a *subpoena duces tecum* to Mr. Jacobowitz (the "Jacobowitz Subpoena") by serving his counsel, Mr. David Benhaim, Esq. Attached hereto as Exhibit I is a true and correct copy of the Jacobowitz Subpoena. Mr. Benhaim, who is also Plaintiff's counsel, notified me that he was authorized to accept service on behalf of Mr. Jacobowitz. Attached hereto as Exhibit J is a true and correct copy of an email from Mr. Benhaim stating that he was authorized to accept the Jacobowitz Subpoena. According

to Mr. Benhaim, he was going to start gathering documents in anticipation of them being responsive to John Hancock's subpoena. (See, Ex. J.)

20. The Jacobowitz Subpoena requested the production documents concerning, among other things, any real estate investments the Insured had and any documents concerning the Insured's net worth and the payment of premiums. (See, Ex. I.) Mr. Jacobowitz was required to produce documents by January 23, 2012. (See, Ex. I.) In addition, the Jacobowitz Subpoena required Mr. Jacobowitz to appear for a deposition on January 26, 2012. (See, Ex. I.)

21. On February 10, 2012, I sent a letter to Mr. Benhaim concerning Mr. Jacobowitz's responses under the Jacobowitz Subpoena. Attached hereto as Exhibit K is a true and correct copy of a letter to Mr. Benhaim, dated February 10, 2012. In the February 10, 2012, letter, I advised Mr. Benhaim, that due to the Stay in the action, Mr. Jacobowitz's deposition was adjourned to March 1, 2012. In addition, I requested that Mr. Jacobowitz produce documents responsive to the Jacobowitz Subpoena on February 27, 2012.

22. On February 23, 2012, I spoke to Mr. Benhaim concerning Mr. Jacobowitz's deposition and was informed that Mr. Jacobowitz would not attend his deposition on March 1. I requested Mr. Benhaim to give me alternative dates for Mr. Jacobowitz's deposition and when he will be producing documents. After several attempts to obtain dates from Mr. Benhaim, during the week of February 27, 2012, John Hancock wrote to United States Magistrate Judge Lois Bloom, requesting the Court's assistance with obtaining dates from Mr. Jacobowitz. Attached hereto as Exhibit L is a true and correct copy of a letter to Magistrate Lois Bloom, dated March 2, 2012.

23.     Mr. Benhaim responded to John Hancock's letter by stating that he was unable to contact Mr. Jacobowitz and would get us alternative dates when he speaks to his client. Attached hereto as Exhibit M is a true and correct copy of a letter from Mr. Benhaim to Magistrate Bloom, dated March 5, 2012.

24.     Two days later, on March 7, 2012, Mr. Benhaim informed me that he has been unable to contact Mr. Jacobowitz and has, therefore, withdrawn as Mr. Jacobowitz's counsel. Attached hereto as Exhibit N is a true and correct copy of an email from Mr. Benhaim, dated March 7, 2011.

25.     On March 7, 2012, Judge Bloom issued an order denying John Hancock's request to compel the Non-Parties production of documents and appearance for depositions because the Subpoenas were issued out of the Southern District of New York. Attached hereto as Exhibit O is a true and correct copy of Magistrate Bloom's Order.

26.     To date, Mr. Jacobowitz has failed to object or produce any documents responsive to the documents requested in the Jacobowitz Subpoena. Furthermore, Mr. Jacobowitz has failed to provide dates for alternative dates in which he would appear for a deposition.

**E.     John Hancock is Unable to Contact the Non-Parties**

27.     I have attempted several times to contact Mr. Rubin and B&M Resort, but they have been unresponsive to any letters sent to them. Furthermore, it appears that Mr. Jacobowitz is unresponsive to requests, even from his own counsel, concerning the Jacobowitz Subpoena.

28.     Accordingly, John Hancock respectfully requests that this Court issue an Order compelling Mr. Jacobowitz, Mr. Rubin and B&M Resort to produce documents and

8

appear for a deposition within the next 10 days from the date of this Court's Order, that they comply with the Defendant's Subpoenas, granting Defendant's request for costs of the Rubin and B&M Resort depositions and granting Defendants such other, further, and different relief as this Court deems necessary and proper.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed: March 8, 2012

_____
Sean R. Flanagan